Chief Judge Kaye
(concurring). Contrary to the majority’s holding, the livery exclusion authorized by regulation (11 NYCRR 60-1.2 [a]) may be equally applicable to compulsory uninsured motorists coverage. But because Supreme Court held that the exclusion is limited to the liability portion of the policy (150 Mise 2d 456, 458), and Liberty Mutual does not contend otherwise, I agree that the insurer in this case should not have the benefit of that statutory construction. By the same token, however, Liberty Mutual’s failure to contest the issue should not bind the Superintendent of Insurance or other insurers who are prepared to make the argument. I therefore concur in the result in this case but write separately to suggest that the livery exclusion may be authorized by regulation for uninsured motorists coverage and does not violate public policy.
Vehicle and Traffic Law § 311 (4) (a) defines the term "owner’s policy of liability insurance” as including whatever minimum coverage is prescribed by regulation. Subpart 60-1 implements the statutory directive and contains the following provision regarding mandatory uninsured motorists coverage:
"Payments to insured. Such an 'owner’s policy of liability insurance’ shall be subject to the applicable provisions of section 167 of the Insurance Law, as amended. For the purpose of complying with the provisions of subsection 2-a of section 167 [now § 3420 (f) (1) (mandatory uninsured motorists coverage)], no policy subject to this Part shall be issued by any authorized insurer unless it contains coverage providing for payments to the insured, as defined in such coverage, by the New York Motor Vehicle Accident Indemnification Corporation, pursuant to the provisions of article 17-A of the *63 Insurance Law applicable to such payments.” (11 NYCRR 60-1.4; emphasis added.)
The regulations additionally provide that "[s]uch an 'owner’s policy of liability insurance’ may contain in substance the following exclusions: (a) while the motor vehicle is used as a public or livery conveyance” (11 NYCRR 60-1.2 [a]; emphasis added). Thus, it is possible to read the statutes and regulations together as authorizing the livery exclusion for uninsured motorists coverage as well as liability coverage. Indeed, it is significant that the majority cannot find any other regulations pertaining to mandatory uninsured motorists coverage, for the Superintendent may have intended subpart 60-1, including the livery exclusion, to apply to this type of insurance. In the posture of the present appeal, it should be clear that the Court’s holding in this case would not foreclose the issue in future cases.
Moreover, I disagree with the majority’s view that a livery exclusion is void as against public policy. To the extent uninsured motorists coverage is unavailable to an innocent passenger because of such an exclusion, a claim for benefits may be filed with the Motor Vehicle Accident Indemnification Corporation (MVAIC).
In 1956, New York became the second American jurisdiction to require automobile owners to carry liability insurance. It soon became clear, however, that compulsory liability insurance could not solve the problems posed by uninsured and hit- and-run drivers (Loufer, Embattled Victims of the Uninsured: In Court With New York’s MVAIC, 1959-1969, 19 Buffalo L Rev 472, 473-474 [1970]). Thus, the Insurance Law was amended to require liability policies to include an uninsured motorists endorsement providing benefits in these situations (see, former Insurance Law § 167 [2-a], recodified as § 3420 [¶] [1]).
Even then, however, mandatory insurance would occasionally fail "to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them” (Insurance Law § 5201 [b]). For example, pedestrians struck by an uninsured, judgment-proof driver would not have a source of recovery. Accordingly MVAIC was created to "close the gaps” in insurance (Matter of Wallace v MVAIC, 25 NY2d 384, 388; see also, Matter of Rice v Allstate Ins. Co., 32 NY2d 6, 12).
MVAIC "provide[s] persons injured by financially irresponsi *64 ble motorists a fund from which they could seek some compensation for their injuries” (Matter of Lloyd [MVAIC], 23 NY2d 478, 481; see generally, Insurance Law art 52). Each automobile insurance company, as a condition of doing business in this State, is required to become a member of MVAIC (Insurance Law § 5203 [bj; Matter of Lloyd, 23 NY2d, at 481) and fund its operations in proportion to the amount of business it does (Insurance Law § 5207 [a], [b]).
The MVAIC scheme sets up mutually exclusive categories of "qualified persons” and "insureds” (Matter of Rice, 32 NY2d, at 10). "Insureds” are persons for whom uninsured motorists coverage is available (see, Insurance Law § 5202 [i]); these people are expected to recover under their policies and not from the MVAIC. A "[qjualified person” is a resident of this State who is not an insured or an owner of an uninsured vehicle (see, Insurance Law § 5202 [b] [i]). Qualified persons may file claims with the MVAIC arising out of accidents caused by the owner or operator of an uninsured motor vehicle (see, Insurance Law § 5208; see generally, Buckner v MVAIC, 66 NY2d 211, 213).
In the present case, the culpable driver was operating his car as a livery but obtained, and paid for, only a personal automobile insurance policy. It is obvious that a vehicle used as a livery poses a greater risk to insurance companies than a personal automobile and would be insured at a higher premium. Indeed, it is for that reason the Superintendent of Insurance authorizes livery exclusions. Accordingly, no one disputes that Liberty Mutual could properly disclaim liability coverage in these circumstances. That disclaimer having rendered the driver "uninsured” (see, Insurance Law § 5201 [b] [6]; § 5202 [j] [1]; Matter of Knickerbocker Ins. Co. [Faison] 22 NY2d 554, 556, cert denied 393 US 1055), the passengers now make the clever argument that they are entitled to the uninsured motorists coverage available under the driver’s own policy. But that portion of the policy, too, contains a livery exclusion.
The Court’s conclusion that public policy militates against giving effect to the livery exclusion is based solely on the notion that innocent passengers might go unrecompensed (majority opn, at 60-61). This proffered public policy is illusory, generated only by ignoring Liberty Mutual’s argument that the MVAIC was available to the passengers to vindicate their claims.
*65 Because of the livery exclusion, these passengers were never "insureds” under the contract’s uninsured motorists coverage and thus they would have been "qualified” to file a claim with MVAIC (compare, Matter of Knickerbocker Ins. Co. [Faison], 22 NY2d, at 558-559 [passengers who were "insureds” at time of accident entitled to recover against insurance company; future disclaimer of coverage due to driver’s noncooperation would not exclude passengers from category of "insureds”]).
Moreover, contrary to the majority’s suggestion, the statute requiring insurance companies to provide uninsured motorists coverage was not intended to be foolproof. The MVAIC was created to fill the gaps in coverage, and it was to that forum the passengers should have sought a remedy.*
Judges Simons, Hancock, Jr., Bellacosa and Levine concur with Judge Smith; Chief Judge Kaye concurs in result in a separate opinion in which Judge Titone concurs.
Order affirmed, with costs.

 The majority notes that these plaintiffs may not have redress under MVAIC because of their failure to give timely notice. That particular parties fail to pursue their rights, however, cannot determine the correct rule generally applicable.